Day, J.
 

 The paramount question presented is: Where territory has been transferred to a village
 
 *54
 
 school district by the county board of education, by virtue of Section 4692, General Code, may the electors of the township from which such territory has been transferred, including some of the electors residing in the territory so transferred, by effecting centralization pursuant to Section 4726-1, General Code, and voting bonds pursuant to Section 7625, General Code, proceed to erect a 'schoolhouse, etc., and thus supersede the action of the county board?
 

 An answer to this problem requires consideration of the two sections, 4692 and 4726-1, General Code, and a determination of the powers granted therein. It is provided by law (Section 4679, General Code) that the school districts of the state shall be styled, respectively, city school districts, exempted village school districts, village school districts, rural school districts, and county school districts.
 

 Definition of the various school districts is given by statute, and school territory not included within a city, exempted village, or village district constitutes a rural district, over which the county board of education has certain jurisdiction, within which is included the power to transfer, as conferred by Section 4692, General Code. A discussion of the legislation creating the county board of education and defining its jurisdiction is found in
 
 County Board of Education of Hancock County
 
 v.
 
 Boehm,
 
 102 Ohio St., 292, 131 N. E., 812, in which Sections 4736 and 4692, General Code, with reference to transfer of territory, are specifically considered.
 

 It is conceded that the New Madison village school district is not an exempted district, and is
 
 *55
 
 a part of the county school district, and we further assume that the transfer of special district No. 3 and subdistricts Nos. 4 and 8 of Butler township to the New Madison village school district has been entirely regular pursuant to the provisions of Section 4692, General Code. The residents of those three districts, now regularly a part of the New Madison village school district, are, for school purposes, qualified electors in the latter district. The legal title of the school property of the three districts has by virtue of Section 4696 become the property of the board of education of the school district to which the territory has been transferred, and by the same section it is provided that their school funds and indebtedness may be equitably apportioned, and to all intents and purposes all living in those three subdivisions having the right to vote are now duly qualified electors in school matters of the New Madison village school district. Manifestly, they cannot vote in school matters in two districts at the same time, and, being legally electors in the New Madison school district, they cannot be legally electors in the district from which they were transferred, in so far as school matters are concerned.
 

 It is urged that Section 4726-1 gives authority to the electors “in townships in which there are one or more school districts” to vote upon the question of centralization, and that if a majority of the electors in the township vote against centralization, the school districts in the township shall proceed as though no election had been held In other words, the construction contended for is to permit Section 4726-1 to override the provisions
 
 *56
 
 of Section 4692, by which the jurisdiction of the county board to transfer territory was granted. This we do not think was the legislative intent.
 

 "While we concede the existence of the civil township as a distinct entity in matters of local self-government, and one of the most ancient in organized government, yet the Constitution has provided, by Section 2, Article VI, that “The General Assembly shall make such provisions, by taxation, or otherwise, as * * # will secure a thorough and efficient system of common schools througnout the state,” and by Section 3, Article VI, that “provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds.”
 

 Pursuant to this power the Legislature has enacted these sections of the statute, and under Section 4692 has given the power to the county board to transfer this territory to the New Madison village school district. These proceedings, it is conceded, are regular, and to now authorize, by virtue of the provisions of Section 4726-1, General Code, an undoing of the steps taken under Section 4692, General Code, is to give a contradictory construction to the statutes.
 

 It is' our duty to so construe the statutes that they may be harmonious, if that can be done. We do not think that the provisions of Section 4726-1 were intended to override the rights conferred and duties prescribed in Section 4692. The legislative intent seems to have been to confide to the county board of education superior jurisdiction in cer
 
 *57
 
 tain matters, among which is this of transfer of territory. As indicating that purpose Section 4727, General Code, specifically provides that “nothing in * * * Sections * * * 4726 and 4726-1, shall prevent a county hoard of education upon * * * petition * * * from transferring territory to or from a centralized school district, the same as to or from a district not centralized.”
 

 ■Sections 4726, 4726-1 and 4727 being
 
 in pari materia
 
 with ¡Section 4692, this controlling power of the county board in the premises would seem to be apparent in the legislative intent. This court has heretofore recognized the superior jurisdiction of the county board in the matter of transferring territory and the effects thereof.
 

 In the case of
 
 County Board of Education of Paulding County
 
 v.
 
 Board of Education of Benton Twp. Rural School District,
 
 104 Ohio St., 1, 135 N. E., 456, the question presented was “whether subsequent to the taking of a vote on the centralization of the schools of a rural school district, resulting in favor of centralization, and the taking of a further vote authorizing the issuance and sale of bonds for the purpose of procuring a site and erecting a school building in such district, the county board of education is authorized to transfer territory from such rural school district to another school district in the county.” And in that case it was held that a county board was within its jurisdiction and was authorized to transfer the territory even after the vote for centralization.
 

 
 *58
 
 If the jurisdiction and control of the county board of education in transferred territory
 
 after
 
 centralization takes place is superior to that of the board of education of the centralized district in issuing and selling bonds, etc., it surely must follow that that jurisdiction and control is equally superior when exercised
 
 before
 
 centralization has taken place, as in the instant case. We think that the Legislature fully intended to confer this superior jurisdiction upon the county board of education.
 

 Believing that the residents of special district No. 3 and subdistricts 4 and 8, after the transfer by the county board to the New Madison village district, were not electors qualified to vote in school matters in Butler township school district, under the provisions of Section 4726-1, General Code, it follows that their participation in the elections of March 15, 1921, and January 10, 1922, was unlawful, and that the elections so participated in by those who were not qualified electors were not valid, in so far as they affected jurisdiction over school matters relating to the previously transferred territory, to-wit, special district 3 and sub-districts 4 and 8. This being so, the school funds and the matter of issuing bonds for school purposes are under the control of the board of education of the New Madison village school district, and the board of education of Butler township centralized sehool district has no right thereto.
 

 We are therefore of the opinion that the conclusions of the Court of Appeals and the court of common pleas in issuing the injunction in this case
 
 *59
 
 were right, and that their judgments in so doing should he affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Robinson, Jones, Matthias and Allen, JJ., concur.
 

 Wanamaker, J., not participating.